IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **KENNETH SLAUGHTER** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.:  1:22-cv-5787** |
| **vs.** | ) | |
| | ) | |
| **HARTFORD LIFE AND ACCIDENT** | ) | |
| **INSURANCE COMPANY** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**COMPLAINT**
**EMPLOYEE RETIREMENT INCOME SECURITY ACT**

COMES NOW Plaintiff Kenneth Slaughter, by and through undersigned counsel, pursuant to the Employee Retirement Income Security Act of 1974, as amended 29 U.S.C. §1001 *et. seq*., and for his cause of action against Defendant Hartford Life and Accident Insurance Company, respectfully states the following:

**Introduction**

1.      Plaintiff Kenneth Slaughter (hereinafter "Plaintiff" or "Mr. Slaughter") brings this action, against Defendant Hartford Life and Accident Insurance Company (hereinafter "Defendant" or "Hartford") for damages caused by the Defendant's breach of statutory, contractual, and fiduciary obligations and violations of the Employee Retirement Income Security Act of 1974, as amended 29 U.S.C. § 1001 *et. seq.* ("ERISA").

2.      Mr. Slaughter seeks recovery and payment of benefits due under a healthcare benefits plan, statutory penalties, and costs and attorney's fees associated with this action, as provided by ERISA.

3.      This is an action brought pursuant to 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331. Under 29 U.S.C. §1132(f), the Court has jurisdiction without respect to the amount in controversy or the citizenship of the parties.

4.      Venue is proper in this District pursuant to 29 U.S.C. §1132(e)(2), in that the subject employee welfare benefit plan and employee insurance program are administered in this District, the breaches of duty herein alleged occurred in this District, and Defendant resides or are found in this district.

## Parties

5.      Mr. Slaughter is an individual residing in the Eastern District of Missouri. He is a vested participant in a Group Insurance Policy for certain employees of The Boeing Company (hereinafter "Boeing"), which provides an employee benefit plan within the meaning of 29 U.S.C. § 1132(a).

6.      Mr. Slaughter has standing to bring this action as a beneficiary under 29 U.S.C. §1132(a).

7.      Hartford provides health care coverage for certain employees of Boeing under an employee welfare benefit plan (hereinafter "Plan") within the meaning of 29 U.S.C. § 1002. Specifically, Hartford provides Long-Term Disability ("LTD") health insurance benefits.

8.      Hartford is an insurance company incorporated in Connecticut and is doing business in Illinois under a license to do business as a Foreign Insurance Company.

9.      Hartford administers and pays benefits under the terms of the LTD plan and is a fiduciary within the meaning of 29 U.S.C. §1002(16),

10.      Boeing's principal place of business is located in this district and the insurance policy at issue was delivered in the State of Illinois.

11.     Boeing serves as the plan administrator and sponsor under the meaning of 29 U.S.C. § 1002(16).

12.     50 Ill. Adm. Code 2001.3 is an Illinois law that regulates insurance.

13.     The standard of review in this case is *de novo*, as  50 Ill. Adm. Cod 2001.3 regulates the insurance policy in this case and requires that it  "may not contain a provision purporting to reserve the discretion to the health carrier to interpret the terms of the contract, or to provide standards of interpretation or review that are inconsistent with the laws of Illinois."

**Facts**

14.     Mr. Slaughter became disabled on August 25, 2020 due to idiopathic cardiomyopathy and chronic systolic diastolic.

15.     At the time of his disability, Mr. Slaughter was employed as a Product Security Engineer for Boeing.

16.     Hartford classified the physical requirements of Mr. Slaughter's occupation as a "sedentary" occupation based on the "general economy" occupation of Systems Engineer 5, as defined by the U.S. Department of Labor.

17.     Mr. Slaughter's last day of work was August 25, 2020.

18.     From August 27, 2020 to September 4, 2020, Mr. Slaughter was hospitalized at St. Luke's Hospital in Chesterfield, Missouri for acute onset chronic systolic heart failure.

19.     At the time he was hospitalized, an echocardiogram showed Mr. Slaughter's ejection fraction was 8%.

20.     During his hospitalization, on September 1, 2020, Mr. Slaughter underwent implantation of an implantable cardioverter-defibrillator (ICD) device for the prevention of sudden cardiac death, which improved his ejection fraction to 23%.

21.     On December 16, 2020, Mr. Slaughter underwent a sleep study that showed a worsening of his obstructive sleep apnea and disruptive sleep that could not be fully alleviated with the use of a CPAP machine.

22.     On January 27, 2021, Mr. Slaughter's cardiologist, Dr. James Ellison, recommended the following restrictions:

  a.   Sit continuously with standard breaks for no more than 8 hours at a time

  b.   Stand intermittently with standard breaks 1 hour at a time and no more than 2 hours in an 8-hour day

  c.   Walk intermittently with standard breaks 1 hour at a time and no more than 1 hour in an 9 hour day

  d.   Never bend, kneel, crouch, climb, or balance

  e.   Occasionally and no more than 2.5 hours bending at the waist, lifting up to 10 pounds, gross manipulation, reaching above shoulder, and reaching below shoulder at desk level

23.     On March 15, 2021, Hartford determined that Mr. Slaughter's medical information did not support his inability to work, and therefore denied Mr. Slaughter's LTD claim.

24.     In its denial of benefits, Hartford relied primarily on an independent review by board-certified Cardiologist Dr. Joseph A. Guzzo, who determined that Mr. Slaughter's records supported light work capacity and no restrictions or limitations for sedentary work.

25.     Dr. Guzzo's determination was in significant part based on a conversation with Dr. Ellison, which was conducted on February 25, 2021.

26.     Dr. Guzzo reported that he and Dr. Ellison were "in agreement that light activity is appropriate" for Mr. Slaughter.

27.     On March 9, 2021, Dr. Ellison provided a letter to Hartford clarifying his evaluation of Mr. Slaughter's restrictions and limitations.

28.     Dr. Ellison stated that Mr. Slaughter's heart failure condition causes him to have episodes of being out of breath, lightheadedness, and continued chest tightening if he walks beyond certain distances and/or if he steps beyond a certain number of steps upward.

29.     Dr. Ellison concluded that because Mr. Slaughter's job requires him to move between buildings in Boeing's complex, including walking long distances and climbing stairs, and because Boeing isolates its classified areas from external communications he cannot perform job duties in those areas remotely, Mr. Slaughter's physical condition prevents him from successfully performing his job responsibilities at Boeing without severely exacerbating and progressing his heart failure.

30.     On March 18, 2021, Hartford's claim reviewers stated that the letter from Dr. Ellison provided "no additional exam or diagnostic findings to alter" Dr. Guzzo's peer review, and Hartford concluded that "[n]o peer review addendum is warranted."

31.     On October 15, 2021, Mr. Slaughter sent an appeal of Hartford's decision to Hartford's Group Benefits Appeals unit.

32.     As part of his appeal, Mr. Slaughter provided Hartford with a Vocational Rehabilitation Evaluation (VRE) performed by Dr. Delores Gonzalez on August 6, 2021.

33.     Dr. Gonzalez concluded that Mr. Slaughter's ability to ambulate is significantly impaired due to balance issues and fall risk which have resulted in Mr. Slaughter requiring use of a walker to balance and walk, and as a result of Mr. Slaughter's use of a walker, he is unable to

lift and carry items weighing up to 10 pounds or to sustain a sufficient walking pace as required for sedentary work.

34.     Dr. Gonzalez further concluded that Mr. Slaughter's balance issues and fall risk constitute a liability that would make securing and maintaining work in the open labor market virtually impossible, and as a result of Mr. Slaughter's chronic insomnia and sleep disturbances, Mr. Slaughter would have difficulty with focus, concentration, persistence, accuracy, and pace in any work environment.

35.     Dr. Gonzalez concluded that the restrictions set forth by Dr. Ellison leave Mr. Slaughter with a residual functional capacity that is less than competitive sedentary work, and that as a result of his impairments, Mr. Slaughter is not a candidate for vocational rehabilitation and is not capable of any competitive work.

36.     On December 7, 2021, Hartford upheld its adverse determination regarding Mr. Slaughter's LTD benefits.

37.     In upholding its decision to deny Mr. Slaughter's LTD benefits, Hartford primarily relied upon peer reviews by Dr. Stephen Broomes, a board-certified Doctor of Internal Medicine, and Dr. David Nowell, a licensed psychologist.

38.     Dr. Broomes concluded that Mr. Slaughter's echocardiogram findings support that Mr. Slaughter "experience[s] significantly reduced residual functional capacity" through the date of review.

39.     Dr. Broomes denied that Mr. Slaughter's medical records support his balance and ambulation issues, but he conceded that Mr. Slaughter was provided with a walker to address these same issues.

40.     Dr. Nowell concluded that Mr. Slaughter's medical records do not support impairment from a psychology perspective.

41.     Neither Dr. Broomes nor Dr. Nowell spoke to Mr. Slaughter's treating cardiologist, Dr. Ellison, in completing their reviews.

42.     Hartford concluded that Mr. Slaughter is able to perform the duties of his occupation and is not disabled under the terms of the Plan.

43.     On December 30, 2021, Mr. Slaughter underwent an Independent Medical Evaluation (IME) performed by Dr. Paul Hinton, a board-certified Doctor of Internal Medicine, the results of which were provided to Hartford.

44.     Dr. Hinton concluded that Mr. Slaughter's prognosis is guarded due to the length of time his symptoms have continued to progress.

45.     Dr. Hinton concluded that Mr. Slaughter's functional limitations are as follows:

   a.  Use extreme caution with rising from a seated position and take time to gain bearings before beginning to move

   b.  Avoid any sort of exertion due to severe limitations with ambulation and shortness of breath after walking approximately 100 feet

   c.  Avoid climbing stairs and unprotected heights due to balance issues

   d.  Avoid stressful situations to reduce any heart strain, which could result in further heart failure

   e.  Avoid pushing and pulling and avoid lifting anything over 10 pounds

   f.  Avoid any activity that exacerbates symptoms or is known to cause disease progression

46.     Dr. Hinton concluded that Mr. Slaughter is functioning at a sub-sedentary level and would have a difficult time maintaining any sort of employment even in a sub-sedentary position.

47.     Dr. Broomes reviewed Dr. Hinton's IME report for Hartford and concluded that Dr. Hinton's report did not change his opinion that Mr. Slaughter is able to perform his job duties within his restrictions and limitations.

48.      Hartford concluded that Mr. Slaughter is not disabled under the terms of the Plan and continues to deny Mr. Slaughter's LTD benefits.

49.     Despite Hartford's conclusion, Mr. Slaughter continues to experience significant debilitating symptoms related to his non-ischemic cardiomyopathy and severe systolic heart failure, which have resulted in Mr. Slaughter requiring a walker to move around and balance.

50.     At maximum medical management, Mr. Slaughter's ejection fraction remains in the low 40%'s and Mr. Slaughter is at severe risk of progression of his condition.

## COUNT I
### Wrongful denial of Benefits pursuant to 29 U.S.C. § 1132(a)(1)(b)

51.     Mr. Slaughter is entitled to LTD benefits under the terms of the Plan.

52.     Mr. Slaughter has provided substantial medical evidence demonstrating that he has been continuously totally disabled under the terms of the Plan since August 25, 2020.

53.     Despite the evidence that Mr. Slaughter is disabled under the Plan, Hartford has denied, and continues to deny, Mr. Slaughter his LTD benefits.

54.     As a result of Hartford's wrongful denial of benefits, Mr. Slaughter has been damaged in the amount of unpaid benefits.

55.     Mr. Slaughter has appealed the adverse benefit determination and exhausted all available administrative remedies.

56.     Hartford's denial of Mr. Slaughter's LTD benefits was arbitrary and capricious, and not based on substantial evidence.

57.     Hartford is required to pay the benefits due under the terms of the Plan, together with prejudgment interest, attorney's fees, and costs.

**WHEREFORE,** Plaintiff Kenneth Slaughter respectfully prays for judgment against Defendant Hartford Life and Accident Insurance Company in the amount of unpaid past benefits, for an Order that Defendant begins future long-term disability and optional disability benefits payments to Plaintiff under the terms of the Plan, for attorney's fees and costs, and for any other such relief as the court deems just and proper.

## COUNT II
## BREACH OF FIDUCIARY DUTY PURSUANT TO 29 U.S.C. § 1132(a)(3)

58.     Mr. Slaughter brings this claim against Hartford under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which permits a participant to bring an action to enjoin any act or practice which violates ERISA or the terms of the plan or to obtain other appropriate equitable relief to redress such violations or to enforce any provisions of ERISA or the terms of the Plan.

59.     Hartford is a Plan Administrator under the plan,

60.     As a Plan Administrator, Hartford both decides a beneficiary right to benefits and pays those benefits and bears an inherent conflict of interest.

61.     Section 29 U.S.C. § 1104 codifies the fiduciary duties that Hartford as Plan administrator owes to beneficiaries like Mr. Slaughter, they are the Duty of Loyalty and the Duty of Prudence.

62.     The duty of loyalty requires the plan administrator to convey complete and accurate information material to the beneficiaries right to benefits under the plan

63. The duty of prudence requires the plan administrator to act as a reasonably prudent claims adjuster would in the circumstances.

64. ERISA § 503, 29 U.S.C. § 1133 requires that every employee benefit plan must:

    a. provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant; and

    b. afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

65. 29 C.F.R. § 2560.503-1 codifies the plan procedures that are required to be implemented in every ERISA governed plan in order to guarantee that Plan administrators fulfill their fiduciary duties and provide a full and fair review of all claims made under an ERISA governed plan.

66. Hartford failed to adequately implement claims procedures that complied with 29 C.F.R. § 2560.503-1 and as a result, breached the dual fiduciary duties it owed Mr. Slaughter.

67. Hartford did not provide Mr. Slaughter with a reasonably clear explanation of what standards and guidelines it was utilizing to determine that Mr. Slaughter's records did not support the disabling physical impairments he continues to suffer.

68. Defendant Hartford breached the duty of loyalty by failing to adequately communicate with Mr. Slaughter the following information that it was required to relay:

    a. Why Hartford did not consider Mr. Slaughter's objective medical evidence submitted with his appeal.

b.  Why Hartford's retained expert's medical opinions was more compelling then the objective medical evidence produced from Mr. Slaughter's treating physicians.

c.  Why independent medical reviewers and exams where necessary when Mr. Slaughter produced objective medical evidence that supported disability.

d.  Why Hartford believed Mr. Slaughter's medical records did not support Mr. Slaughter's difficulties with balance and walking, despite showing multiple falls, a recommendation that Mr. Slaughter never balance, and the prescription of a walker to assist him with walking and balancing.

e.  Why Hartford believed Mr. Slaughter's medical records did not support Mr. Slaughter's sleep impairments, despite a sleep study demonstrating obstructive sleep apnea that could not be completely alleviated with the use of a CPAP machine.

f.  the evidence Hartford needed from Mr. Slaughter for Hartford to reverse its determination that he does not meet the definition of disabled.

69.  Defendant Hartford breached the duty of Prudence by:

a.  Failing to adequately review all the medical evidence available when making the determination that Mr. Slaughter's LTD benefits should be denied.

b.  Failing to evaluate the combined, inter-connected, and aggregate impact of Mr. Slaughter's impairments when deciding Mr. Slaughter's appeal.

c.  Failing to properly evaluate and consider Mr. Slaughter's neurological condition and the impact of Mr. Slaughter's heart failure on his neurological condition.

d. Failing to properly contextualize the slight improvements in Mr. Slaughter's condition with his overall impaired condition and ongoing high risk of heart failure.

e. Failing to properly consider the physical demands of Mr. Slaughter's job when determining that Mr. Slaughter's LTD benefits and his appeal should be denied.

f. Failing to properly consider the problem-solving and other cognitive demands of Mr. Slaughter's job when determining that Mr. Slaughter's LTD benefits and his appeal should be denied.

70. The above breaches are the byproduct of a review process that is not compliant with 29 CFR § 2560.503-1, which results in an exacerbation of the inherent conflict of interest of Hartford being both the decider and payer of benefits and permits Hartford to routinely breach the fiduciary duties it owes to beneficiaries such as Mr. Slaughter.

71. The breaches were also the byproduct of Hartford's arbitrary and inconsistent interpretation of plan provisions that were made to the detriment of Mr. Slaughter and in favor of Prudential and Prudential's financial interest in denying Mr. Slaughter's claims.

72. As a result of Hartford's breaches of the dual fiduciary duties of loyalty and rudence owed to Mr. Slaughter under ERISA, Mr. Slaughter suffered actual harm, as he was denied benefits to which he was entitled under the Plan, he incurred attorneys' fees and costs, and he suffered other financial losses.

73. Hartford breached its fiduciary duties under ERISA § 404, 29 U.S.C. § 1104, insofar as it failed to discharge its duties handling Mr. Slaughter's benefits claim in a careful, skillful, and diligent manner.

74.

**WHEREFORE**, Plaintiff Kenneth Slaughter respectfully prays that this Court:

1) Grant judgment in his favor and against Defendant on all claims;

    2) Order that Defendant pay restitution for all benefits that Mr. Slaughter is entitled to but for the Prudential's breaches of fiduciary duties. due under the Plan from to the date of judgment, including interest thereon;

    3) Declare Plaintiff's rights under the terms of the Plan, and clarify his rights to future benefits under the terms of the Plan;

    4) Enjoin Defendant to provide a procedure for a full and fair review of adverse determinations under the Plan in accordance with 29 U.S.C. § 1133;

    5) Enjoin Defendant to discharge its fiduciary duties in accordance with 29 U.S.C. § 1104;

    6) Order restitution or surcharge to disgorge Defendant's unjust enrichment in wrongfully delaying and denying benefits and/or to make Plaintiff whole for losses, and payment of his attorneys' fees caused by Defendant's violation of 29 U.S.C. § 1133 and breach of fiduciary duty;

    7) Order that Defendant pay the costs of suit, including Plaintiff's attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g); and

    8) Award all such other and further relief as this Court deems just and proper.

**Respectfully submitted,**

*/s/ Matthew R. Davis*
Matthew R. Davis
Gallagher Davis, LLP
2333 S. Hanley Road
St. Louis, MO 63144
(314) 725-1780
(314) 725-0101 Fax
matt@gallagherdavis.com

Mark D. DeBofsky
DeBofsky Law, Ltd.
150 N. Wacker Dr., Suite 1925
Chicago, Illinois 60606
mdebofsky@debofsky.com